UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL SHIPPING COMPANY OF SAUDI ARABIA | § § § | |
| VS. | § § | C.A. NO. 4:19-CV-1096 |
| VALERO MARKETING AND SUPPLY COMPANY | § § § | |

**DEFENDANT VALERO MARKETING AND SUPPLY COMPANY'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL
COMPLAINT, AND THIRD-PARTY COMPLAINT AND 14(C) TENDER AGAINST
TRAFIGURA TRADING LLC**

Defendant / Third-Party Plaintiff Valero Marketing and Supply Company ("Valero"), through its attorneys, Blank Rome LLP, files this Answer and Affirmative Defenses to Plaintiff National Shipping Company of Saudi Arabia's ("NSCSA") Original Complaint (the "Complaint"), and concurrently, a Third-Party Complaint against Third-Party Defendant Trafigura Trading LLC ("Trafigura") pursuant to Fed. R. Civ. P. 14(a)(3) and a tender of Trafigura directly to NSCSA pursuant to Fed. R. Civ. P. Rule 14(c). Valero respectfully avers upon information and belief as follows:

**ANSWER TO NSCSA'S ORIGINAL COMPLAINT**

Valero responds to each individual paragraph of NSCSA's Complaint upon information and belief as follows:

1. Valero denies the allegations of Paragraph 1 for lack of information sufficient to justify a belief therein.

2. Valero admits the allegations in Paragraph 2 that it is a foreign for profit corporation organized and existing under the laws of the State of Delaware, whose principal office and place of business is located at One Valero Way, San Antonio, Texas 78249, and that it is

authorized to do business within the State of Texas and, at all times material, did business in Texas as a provider of bunker fuel, entering into contracts for the sale/supply of bunker fuel and/or other contracts that were performable in whole or in part in Texas, and that it may be served with process by serving its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136. Except as admitted, denied.

3. Valero admits the allegations of Paragraph 3.

4. Valero admits the allegations of Paragraph 4.

5. Valero admits the allegations of Paragraph 5 that it sold and delivered bunker fuel to the Vessel M/V BAHRI YANBU (the "Vessel") as outlined in Valero's answer to Paragraph 6 below. Except as admitted, denied.

6. Valero admits the allegations of paragraph 6 that on or about March 19, 2018, NSCSA, as buyer, entered into Sales Contract 40587856 with Valero, as seller, by which Valero agreed to supply 750 metric tons, plus/minus 5% at Valero's option, of bunker fuel to the Vessel.

7. Valero admits the allegations of paragraph 7 that on March 30, 2019, a barge hired by Valero delivered about 750 metric tons of bunker fuel to the Vessel while she was alongside City Dock 31, Houston Texas, and that a Bunkering Certificate was issued that same day memorializing the delivery of 750 metric tons of bunker fuel to the Vessel. Except as admitted, denied.

8. Valero denies the allegations of Paragraph 8 for lack of information sufficient to justify a belief therein.

9. Valero admits that NSCSA has submitted a demand to Valero with respect to alleged damages it claims to have incurred in connection with its use of the bunker fuel aboard the

Vessel, and that Valero has denied and continues to deny (with a full reservation of all rights and defenses) any responsibility or liability for the alleged damages claimed by NSCSA. Except as admitted, denied.

10. Valero denies the allegations of Paragraph 10.

11. In response to Paragraph 11 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

12. Valero admits the allegations of Paragraph 12 that it is engaged in the business of selling, marketing, and providing marine fuels to customers. Except as admitted, denied.

13. Valero denies the allegations of Paragraph 13.

14. Valero denies the allegations of Paragraph 14.

15. In response to Paragraph 15 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

16. Valero denies the allegations of Paragraph 16.

17. Valero denies the allegations of Paragraph 17.

18. Valero denies the allegations of Paragraph 18.

19. Valero denies the allegations of Paragraph 19.

20. Valero denies the allegations of Paragraph 20.

21. In response to Paragraph 21 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

22. Valero denies the allegations of Paragraph 22.

23. Valero denies the allegations of Paragraph 23.

24. In response to Paragraph 24 of the Complaint, Valero repeats and re-alleges its answers to each preceding Paragraph in this Complaint as if fully set forth herein.

141517.06512/114278834v.1

25. Valero denies the allegations of Paragraph 25.

26. Valero denies the allegations of Paragraph 26.

27. Valero denies the allegations of Paragraph 27 and also the claim for damages contained within the un-numbered "prayer" paragraph following Paragraph 27.

**First Affirmative Defense**

NSCSA's Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Valero incorporates by response herein the content of Paragraphs 1 through 27 above as well as its Third-Party Complaint below in support of this affirmative defense.

**Second Affirmative Defense**

Valero denies that NSCSA is entitled to any relief against it, whether as prayed for or otherwise.

**Third Affirmative Defense**

If NSCSA was damaged, which damages are not admitted but expressly denied, then such damages were caused by the sole negligence or other legal fault of NSCSA or third parties for whom Valero is not responsible.

**Fourth Affirmative Defense**

If NSCSA was damaged, which damages are not admitted but expressly denied, then the acts or omissions of third parties for whom Valero is not responsible were the legal, sole, proximate, intervening, superseding and/or new and independent cause of the damages alleged, if any.

**Fifth Affirmative Defense**

If NSCSA was damaged, which damages are not admitted but expressly denied, then such damages were caused by and/or arose as a result of the unseaworthiness and/or other defective conditions of the Vessel, in whole or in part, for which Valero is not responsible.

**Sixth Affirmative Defense**

If NSCSA was damaged, which damages are not admitted but expressly denied, then NSCSA has failed to mitigate its damages, and they should be barred or reduced accordingly.

**Seventh Affirmative Defense**

Valero pleads as a defense the terms and conditions as set forth in the sales contract at issue between Valero and NSCSA dated March 19, 2018 and bearing Valero Sales Contract Confirmation No. 40587856 (the "Valero Contract"), which in turn incorporates Valero's "*General Terms and Conditions For Petroleum Product Purchases and Sales, 2014 Edition*" ("Valero GT&Cs") and Valero's "*Marine Provisions, 2017 Edition*," ("Valero Marine Provisions"), all of which are incorporated herein verbatim. Valero specifically invokes as an affirmative defense the warranties, notice provisions, waivers, limitations of liabilities, and liquidated damages / limitation clauses set forth in the Valero Contract, Valero GT&Cs, and Valero Marine Provisions.

**Eighth Affirmative Defense**

NSCSA's damages are barred by release, contractual limitation, estoppel and/or waiver.

**Ninth Affirmative Defense**

If NSCSA was damaged, which damages are not admitted but expressly denied, then such damages are barred by the doctrine of laches and/or all applicable statutes of limitations.

## **THIRD-PARTY COMPLAINT AND RULE 14(C) TENDER AGAINST TRAFIGURA TRADING LLC**

Valero Marketing and Supply Company, now as Defendant/Third-Party Plaintiff, without waving any rights, defenses or affirmative defenses, brings the following Third-Party Complaint and Fed. R. Civ. P. Rule 14(c) tender against Third-Party Defendant Trafigura alleges upon information and belief as follows:

### I.    Jurisdiction and Venue

1. This is a case of admiralty and maritime jurisdiction under 28 U.S.C. §1333 and an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h). Alternatively, this Court has diversity jurisdiction under 28 U.S.C. §1332(a).

2. Supplemental jurisdiction for this Third-Party Complaint also exists under 28 U.S.C. § 1367 because this Third-Party Complaint against Trafigura is so related to the claims asserted in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

### II.   The Parties

4. Valero is a Delaware Company with its principal place of business in San Antonio, Texas.

5. Trafigura is upon information and belief a business entity with its principal place of business in Houston, Texas. Among other things, Trafigura was at all times relevant herein a manufacturer, as that term is defined under Texas Civil Practice & Remedies Code § 82.001(4), who placed certain products or component parts thereof into the stream of commerce as described below.

6. NSCSA is upon information and belief a foreign business entity with its principal place of business in Saudi Arabia.

7. The M/V BAHRI YANBU ("Vessel") is upon information and belief a Vessel owned, operated and/or otherwise controlled by NSCSA.

### III. Factual Background

8. Valero is, among other things, engaged in the business of selling and distributing marine bunker fuels.

9. In February 2018, Valero entered into an agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 1") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 1 was stored in Trafigura's storage tank T-200-8 at the BOSTCO tank farm facility located in La Porte, Texas (the "BOSTCO Facility"). In accordance with the agreement, on or about Feb. 23, 2018, Trafigura Fuel Oil Parcel 1 (constituting approximately 20,483 barrels) was transferred from Trafigura Storage Tank T-200-8 into Valero Receiving Tank 50-7 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 1 (or portions thereof) was later shifted from Valero Receiving Tank 50-7 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

10. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 2") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 2 was stored in Trafigura's storage tank T-200-11 at the BOSTCO Facility. In

accordance with the agreement, on or about March 2, 2018, Trafigura Fuel Oil Parcel 2 (constituting approximately 38,536 barrels) was transferred from Trafigura Storage Tank T-200-11 into Valero Receiving Tank 50-7 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 2 (or portions thereof) was later shifted from Valero Receiving Tank 50-7 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

11. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 3") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 3 was stored in Trafigura's storage tanks T-200-8 and T-200-11 at the BOSTCO Facility. In accordance with the agreement, on or about March 3, 2018, Trafigura Fuel Oil Parcel 3 (constituting approximately 1,505 barrels) was transferred from Trafigura Storage Tanks T-200-8 and T-200-11 into Valero Receiving Tank 50-8 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 3 (or portions thereof) was later shifted from Valero Receiving Tank 50-8 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

12. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 4") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 4 was stored in Trafigura's storage tanks T-200-8 and T-100-11 at the BOSTCO Facility. In accordance with the agreement, on or about March 4, 2018, Trafigura Fuel Oil

Parcel 4 (approximately 54,883 barrels) was transferred from Trafigura Storage Tanks T-200-8 and T-100-11 into Valero Receiving Tank 320-2 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 4 was later shifted from Valero Receiving Tank 320-2 to other Valero Tanks within the BOSCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

13. In February 2018, Valero entered into another agreement to purchase from Trafigura certain quantities of fuel oil ("Trafigura Fuel Oil Parcel 5") so that this product could be added to Valero's current stock of marine bunker fuel. Prior to the sale, Trafigura Fuel Oil Parcel 5 was stored in Trafigura's storage tank T-50-4 at the BOSTCO Facility. In accordance with the agreement, on or about March 9, 2018, Trafigura Fuel Oil Parcel 5 (approximately 2,319 barrels) was transferred from Trafigura Storage Tanks T-50-4 into Valero Receiving Tank 320-3 (which is also located at the BOSTCO Facility). Upon information and belief, Trafigura Fuel Oil Parcel 5 was later shifted from Valero Receiving Tank 320-3 to other Valero Tanks within the BOSTCO Facility, eventually making its way to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

14. On or about March 19, 2018, Valero entered into Valero Sales Contract Confirmation No. 40587856 (the "Valero – NSCSA Contract") with NSCSA for the sale of certain quantities of bunker fuel (the "Valero Bunker Fuel") to the Vessel.

15. Upon information and belief, on or before March 30, 2019, some or all of Trafigura Fuel Oil Parcels 1-5 (now collectively referred to as the "Trafigura Fuel Oil") had made their

way through the various Valero tanks at the BOSTCO Facility to Buffalo Barge 302, which Valero uses to supply marine bunker fuel pursuant to sales to third-party customers.

16. The Valero Bunker Fuel (which contained the Trafigura Fuel Oil) was delivered to the Vessel on or about March 30, 2018 in the port of Houston, Texas by way of transfer from Buffalo 302 to a separate barge, and thereafter from that barge to the Vessel.

17. NSCSA has claimed in its Original Complaint at Paragraph 7 as follows:

> *On March 30, 2019, a barge hired by Valero delivered about 750 metric tons of unsuitable, substandard, defective, contaminated, unfit, non-conforming, off-specification bunker fuel (hereinafter "bad fuel") to the Vessel while she was alongside City Dock 31, Houston, Texas. On that same day a Bunkering Certificate was issued memorializing the delivery of 750 metric tons of the bad fuel to the Vessel.*

18. NSCSA has further claimed in its Original Complaint at Paragraph 8 as follows:

> *On 27 April 2018, the Vessel switched to first use the bad fuel. On May 1, 2018, the Vessel's main engine reported numerous faults, resulting in its having to be stopped entirely for checks. The Vessel drifted for almost two and a half days until the crew was able to restart the main engine on May 3, 2018. The Vessel called at Alexandria, Egypt on May 5, 2018 to carry out investigations into the main engine damage. The damage to the Vessel caused by use of the bad fuel included damage to the fuel injection pumps (plunger and barrel), injection control units, pistons and valves. As a result of the damage, NSCSA was forced to carry out repairs to the Vessel's engine between May 5 and May 11, 2018 resulting in further loss of time for the Vessel. The Vessel was also forced to discontinue use of the bad fuel to avoid any further damage to the main engine. As the Vessel was left with insufficient bunkers to make its next scheduled call, NSCSA had to purchase replacement bunkers at Jeddah and to debunker the remaining bad fuel at Fujairah.*

19. Valero was without fault in causing and/or contributing to the damages asserted in NSCSA's Original Complaint. The contamination of the Valero Bunker Fuel was legally caused solely by the acts, omissions, or other conduct of Trafigura, or by its breaches of

the applicable contracts with Valero and/or negligent acts or failures to act. The source of all damages, costs, and expenses incurred by NSCSA is Trafigura's provision of unsuitable, substandard, defective, contaminated, unfit, nonconforming, and/or off-specification product, i.e., the Trafigura Fuel Oil.

## IV. First Cause of Action – Breach of Contract

20. Valero repeats and reasserts each and every allegation set forth above in Third-Party Complaint Paragraphs 1 through 19 as if fully set forth herein.

21. Valero and Trafigura were parties to contracts for the sale of the Trafigura Fuel Oil Parcels referenced above. By virtue of its contracts with Valero, Trafigura agreed to provide the Trafigura Fuel Oil to Valero, and the Trafigura Fuel Oil was required to provide fuel oil that was not unsuitable, substandard, defective, contaminated, unfit, nonconforming, and/or off-specification.

22. Valero performed all of the obligations required of it under the various contracts at issue between Valero and Trafigura with respect to the purchase of the Trafigura Fuel Oil Parcels.

23. However, Trafigura provided the Trafigura Fuel Oil to Valero in a condition that, unbeknownst to Valero, was out of specification, unsuitable, substandard, defective, and/or contaminated, all in breach of the contract between Valero and Trafigura for the purchase of the Trafigura Fuel Oil.

24. The foregoing acts or failures to act as contracted by Trafigura proximately caused significant damages and loss to Valero. Valero hereby seeks recovery of all damages, costs, expenses, interest, and attorneys' fees that have been or may be incurred as a result of Trafigura's contractual breaches.

25. To the extent Valero may be held liable to NSCSA and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from third-party defendant Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

**V.  Second Cause of Action – Negligence**

26. Valero repeats and reasserts each and every allegation set forth above in Third-Party Complaint Paragraphs 1 through 25 as if fully set forth herein.

27. Trafigura's sale and provision of the Trafigura Fuel Oil to Valero in a condition that was out of specification, unsuitable, substandard, defective, and/or contaminated constitutes negligence. Trafigura owed a duty to Valero to act non-negligently by providing suitable, non-contaminated Trafigura Fuel Oil, and to ensure the Trafigura Fuel Oil met all industry-standards, was suitable for its intended use, was not defective, and not contaminated. Trafigura's failure to do so was negligent and its breach of its duty proximately caused damages to Valero and, in turn, NSCSA and the Vessel and other related expenses.

28. Valero seeks recovery of all damages, costs, and expenses that have been or may be incurred as a result of Trafigura negligent conduct as outlined above.

29. To the extent Valero may be held liable to NSCSA and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

**VI.  Third Cause of Action – Breach of Express Warranties, Implied Warranties, and Implied Warranty of Fitness for a Particular Purpose**

30. Valero repeats and reasserts each and every allegation set forth above in Third-Party Complaint Paragraphs 1 through 29 as if fully set forth herein.

31. Valero purchased the Trafigura Fuel Oil from Trafigura in exchange for certain express and implied warranties and representations with respect to the quality and characteristics of the Trafigura Fuel Oil, which Trafigura knew or should have known were for the particular purpose of serving as fuel oil for Valero's downstream bunker fuel products and customers. The representations and warranties were part of the benefit of the bargain as set forth in the Valero – Trafigura contracts referenced above. The Trafigura Fuel Oil did not comply with the representations and warranties agreed to by Trafigura, and Valero has since suffered damages and loss as a result of the breach of warranties.

32. The alleged contamination was caused in whole or in part by the acts, omissions, fault, negligence, want of due care, failure to warn, product defect, improper packaging, improper handling and/or breach of warranty of third-party defendant Trafigura including, but not limited to, its failure to exercise due care in the preparation and delivery of the Trafigura Fuel Oil.

33. As a direct and proximate result of third-party Trafigura's breach of the aforesaid representations and warranties, it is jointly and severally liable over to NSCSA for all of its alleged losses and damages.

34. Any loss and/or damage to NSCSA and its Vessel was due to the breach of warranties by Trafigura, who should be held directly liable over to NSCSA.

35. To the extent Valero may be held liable to NSCSA and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

## VII. Fourth Cause of Action – Products Liability

36. Valero repeats and reasserts each and every allegation set forth above in Third-Party Paragraphs 1 through 35 as if fully set forth herein.

37. The alleged contamination was caused in whole or in part because Trafigura defectively designed and/or defectively manufactured the Trafigura Fuel Oil due to an error in the manufacturing process and/or failed to provide adequate warnings and/or instructions concerning the Trafigura Fuel Oil. These defects were a substantial factor in causing the alleged property damage injuries suffered by NSCSA.

38. As a direct and proximate result of Trafigura's defective design and/or defective manufacture and/or failure to provide adequate warnings and/or instructions concerning the Trafigura Fuel Oil, it is jointly and severally liable over to NSCSA for all of its losses and damages.

39. To the extent Valero may be held liable to NSCSA and/or other third parties, whether by judgment or settlement, Valero is entitled to indemnity and/or contribution from Trafigura including recovery of attorneys' fees and costs incurred in defending against such claims.

## VIII. Fifth Cause of Action – Statutory Indemnity Against Trafigura Pursuant to Texas Civil Practice & Remedies Code § 82.002, *et. seq.*

40. Valero repeats and reasserts each and every allegation set forth above in Paragraphs 1through 39 as if fully set forth herein.

41. Valero purchased all of the Trafigura Fuel Oil and added it into the Valero Bunker Fuel prior to the delivery of Valero Bunker Fuel to the Vessel on or about March 30, 2018.

42. Valero did not alter the Trafigura Fuel Oil in any way, did not cause or have knowledge of any adulteration or contamination within the Trafigura Fuel Oil, and Valero at all times

141517.06512/114278834v.1

stored and handled the Trafigura Fuel Oil in the manner necessary to maintain its fitness for use.

43. NSCSA later filed the above-captioned lawsuit against Valero on March 25, 2019 in the United States District Court for the Southern District of Texas. A copy of NSCSA's Original Complaint is located at Docket No. 1 in the above-captioned matter, and is incorporated herein by reference.

44. NSCSA's lawsuit alleges, among other things, that NSCSA was injured by the Valero Bunker Fuel it purchased from Valero, which among other things allegedly caused physical damage to NSCSA's Vessel and its associated parts. See NSCSA Original Complaint Paragraphs 7-8.

45. Valero's liability to NSCSA, if any, was solely due to the contaminated nature of the Trafigura Fuel Oil provided to Valero by Trafigura. Valero was and is not independently culpable for the defects in the Trafigura Fuel Oil.

46. Valero has or will suffer damages and loss as a result of Trafigura manufacturing and supplying Valero with the contaminated Trafigura Fuel Oil, including damages and losses stemming from the above-captioned action asserted by NSCSA against Valero.

47. Based on these facts, pursuant to Section 82.002 of the Texas Civil Practice and Remedies Code, Valero, as a seller, is entitled to indemnity as against Trafigura, the manufacturer of the Trafigura Fuel Oil, for any "loss," including court costs and other reasonable expenses, reasonable attorney's fees, and any reasonable damages, which Valero has incurred and will incur in defending against the underlying action asserted against Valero by NSCSA.

48. Valero has demanded defense and indemnity from Trafigura. Trafigura has ignored or refused to provide Valero with a defense or with indemnity. Therefore, Trafigura breached

its statutory duty to hold Valero harmless against the loss that Valero incurred in the underlying action.

49. Valero is entitled to indemnity from Trafigura, and for its expenses incurred in defending the action brought by NSCSA in the above-captioned matter, pursuant to Sections 82.001 et seq. of the Texas Civil Practices and Remedies Code.

### IX. Rule 14(c) Tender of Third-Party Defendant to Plaintiff

50. Valero invokes the provisions of Fed. R. Civ. P. 14(c) and tenders Trafigura as a direct defendant to Plaintiff NSCSA because Trafigura is wholly liable to NSCSA for remedy over, contribution or otherwise on account of the same transaction and occurrence or series of transactions and occurrences in this matter. Valero accordingly demands judgment in Plaintiff NSCSA's favor against Trafigura. Pursuant to Rule 14(c)(1-2), Trafigura must respond to the Complaint of NSCSA and defend against NSCSAs claims, and this action shall proceed as if NSCSA had sued Trafigura directly.

**PRAYER**

**WHEREFORE**, the premises considered, Valero Marketing and Supply Company requests that the Court enter an order or judgment finding:

(1) **_On Valero's Answer to NSCSA's Complaint_**: That Valero's Answer to NSCSA's Complaint be deemed good and sufficient and, that after due proceedings be had, there be judgment in favor of Valero dismissing NSCSA's claim, at NSCSA's cost, and that Valero be granted such other and further relief as equity and justice of the cause may require and permit.

(2) **_On Valero's Third-Party Complaint Against Trafigura_**: That judgment be entered in favor of Valero on its third-party complaint against Trafigura and award damages to

141517.06512/114278834v.1

Valero in the amount to be determined at trial, plus pre-judgment interest, costs and fees, and for such other and further relief as equity and justice of the cause may require and permit.

| | |
|---|---|
| Houston, Texas | Respectfully submitted, |
| April 16, 2018 | BLANK ROME LLP |

*/s/ Keith B. Letourneau*
Keith B. Letourneau (Attorney-in-charge)
State Bar No. 00795893
Federal I.D. No. 20041
Jeremy A. Herschaft
State Bar No. 24091970
Federal I.D. No. 1450990
Zachary J. Wyatte
State Bar No. 24110556
Federal I.D. No. 3350752
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile:  (713) 228-6605
kletourneau@blankrome.com
jherschaft@blankrome.com
zwyatte@blankrome.com

*Attorneys for Valero Marketing and Supply Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2019, I caused the foregoing to be electronically filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

>*/s/ Jeremy A. Herschaft*
>Jeremy A. Herschaft