UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| National Shipping Company of Saudi Arabia, § | Civil Action No. 4:19-cv-1096 |
|     *Plaintiff,* § | |
| v. § | |
| Valero Marketing and Supply Company § | |
|     *Defendant and Third-Party Plaintiff* § | |
| v. § | |
| Trafigura Trading LLC § | |
|     *Third-Party Defendant* § | |
| § | |

## TRAFIGURA TRADING LLC'S RENEWED MOTION TO DISMISS

After the Court invited Valero Marketing and Supply Company ("Valero") to amend its Third-Party Complaint, Valero filed its Second Amended Third-Party Complaint (Dkt. #43), and therein identified and attached the same three contracts previously attached by Trafigura Trading, LLC ("Trafigura") to its initial May 31, 2019 Motions (one contains a mandatory New York arbitration provision, and the other two contain an exclusive New York choice of jurisdiction clause). **In other words, Valero's amended pleading removes any doubt about what contracts govern the transactions at issue, and removes any dispute that one of the contracts contains a mandatory arbitration clause.** As such, pursuant to Federal Rule of Civil Procedure 12(b)(3), Trafigura hereby renews its motion to dismiss those third-party claims asserted by Valero against Trafigura that are subject to the mandatory, written, and valid arbitration clause. In support of the present Motion, Trafigura states as follows:

I.    **Introduction**

In its first Third-Party Complaint against Trafigura, Valero alleged without support that in February 2018, Trafigura and Valero entered five agreements under which Trafigura sold five

"parcels" of "fuel oil" to Valero.[1] Valero alleged that the fuel oil was defective and ultimately caused damage to a vessel belonging to Plaintiff National Shipping Company of Saudi Arabia ("NSCSA"), for which Valero may be responsible.[2] On May 31, 2019, Trafigura moved to dismiss Valero's third-party claims that were subject to a written contract with a mandatory arbitration clause.[3] Trafigura also moved to sever and transfer Valero's third-party claims that were subject to two contracts with a mandatory choice of jurisdiction clause, selecting New York federal and state courts.[4] To each Motion, Trafigura attached the three contracts it contended governed the deliveries of fuel oil at issue in Valero's Third-Party Complaint. In the alternative, Trafigura moved for a more definite statement, arguing that Valero had not adequately described the agreements at issue.[5]

On July 8, 2019, this Court granted Trafigura's Motion for More Definite Statement, giving Valero until July 31, 2019 to "name the contracts and identify the ones implicated by each count."[6] The Court also permitted Trafigura until August 23, 2019 to renew its Motions to Dismiss and Sever/Transfer.[7]

On July 31, 2019, Valero amended its Third-Party Complaint, and therein Valero conceded that three contracts (not five) control the relevant transfers.[8] Valero agreed with Trafigura that the three contracts identified in Trafigura's Motion to Dismiss and Motion to Sever and Transfer

---

[1] Valero's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint, and Amended Third-Party Complaint and 14(c) Tender Against Trafigura (Dkt. #14) ("Third-Party Compl.") at ¶¶9-13.
[2] Dkt. #14 at ¶¶14-19.
[3] Dkt. #27.
[4] Dkt. #26.
[5] Dkt. #25.
[6] Dkt. #40.
[7] *Id.*
[8] Dkt. #43 at ¶¶10-32.

govern the relevant deliveries of fuel oil at issue.[9] Indeed, Exhibits A through C to Valero's Second Amended Third Party Complaint (Dkt. #43-1 through #43-3) are exact copies of the contracts attached to Trafigura employee Amanda Samples' Affidavit, located at Dkt. #25-1. The exhibits attached by Valero even have the same file stamps as the contracts attached to Ms. Samples' Affidavit. *See* Dkt. #43-1 through 43-3 (bearing Dkt. #25-1 file stamps).

It is now clear there is no dispute about what contracts govern the transactions at issue, and there is no dispute that one of the three contracts contains a mandatory arbitration clause, selecting AAA arbitration in New York. *See* Dkt. #43-1 (Exhibit A to Valero's Second Amended Third-Party Complaint at Section 26). Hence, Valero's third-party claims subject to this contract should be dismissed.

## II. A VALID, WRITTEN ARBITRATION CLAUSE REQUIRES VALERO'S THIRD-PARTY CLAIMS SUBJECT TO THAT CLAUSE BE DISMISSED.

### A. Federal Law Requires Enforcement of Arbitration Agreements.

The Federal Arbitration Act and subsequent federal authority interpreting the Act embody a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 360 (5th Cir. 2013); *Leblanc v. Epstein*, 2003 WL 24196892, at *9 (S.D. Tex. Aug. 7, 2003) (Rosenthal, J.) (summarizing law regarding "healthy regard for the federal policy favoring arbitration."). Due to this "liberal policy," "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As the Supreme Court has observed, "[t]he preeminent concern of Congress in passing the [Federal Arbitration Act] was to enforce

---

[9] *Id.*

private agreements into which parties had entered," a concern which "requires that [courts] rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, (1985). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Federal policy favoring arbitration applies even where, as here, it may lead to piecemeal litigation, as different parts of a dispute are litigated in different forums. The Fifth Circuit explains:

> "We have anticipated that arbitration of a portion of a dispute will lead to duplicated efforts and inefficiency if the dispute, once arbitrated, must then be resolved in court with nonsignatory parties. ***But we have held that any inconvenience or duplication of effort is a consequence of having agreed to arbitrate***. Specifically, duplication of effort, redundant testimony, and the possibility of inconsistent findings ... are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain. ***The relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement***. This is so notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement, meaning that parties subject to arbitration will have to re-litigate issues with non-parties."

*The Rice Company (Suisse), S.A. v. Precious Flowers, Ltd.*, 523 F.3d 528, 540 (5th Cir. 2008). Where parties to a "maritime transaction" agree to arbitrate their disputes, Section 2 of the Federal Arbitration Act specifically provides that such an agreement will be "valid, irrevocable, and enforceable." In *Texaco Exploration and Production Co. v. AmClyde Engineered Products Co., Inc.*, 243 F.3d 906, 908 (5th Cir. 2001), the Fifth Circuit clarified that in maritime disputes, arbitration agreements shall be binding, even where one party has invoked Rule 14(c) of the Federal Rules of Civil Procedure and purported to "tender" to a party subject to an arbitration clause. The court reasoned that "the policy of liberal joinder in maritime cases embodied in Rule 14(c) does not supersede the statutory right to enforce contractual arbitration." *Id.* at 908. Citing Supreme Court precedent, the *Texaco* court stated that it must "enforce private arbitration agreements even if the result is piecemeal litigation." *Id.* at 910 (internal quotations omitted).

B.  **A Valid Agreement to Arbitrate Existed Between Valero and Trafigura as to Claims Relating to Product Sales Under Contract No. 1654384**

Parties agree to arbitrate a dispute when: (1) there is a valid agreement to arbitrate; and (2) the dispute falls within the scope of the arbitration clause. *Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001);[10] *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998); *Wood v. PennTex Resources, L.P.*, 458 F. Supp. 2d 355, 361 (S.D. Tex. 2006) (Rosenthal, J.). Here, both prongs are met.

There is now no dispute that three contracts that cover the product delivered by Trafigura to Valero. The documents comprising the three contracts are exhibits to the Affidavit of Amanda Samples ("Samples Aff."), attached hereto, and those three contracts are designated Contract No. 1654384, Contract No. 1659403, and Contract No. 1669270.[11] Valero attaches the same three contracts to its Second Amended Third Party Complaint.[12] In case there remained any doubt, on August 14, 2019, Trafigura answered Valero's Second Amended Third Party Complaint and admitted these three contracts governed the transfers at issue.[13] Contract No. 1654384 contains a mandatory arbitration clause in Section 26, titled "Law and Jurisdiction." The arbitration clause reads:

> "***ANY AND ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN THE PARTIES ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT*** OR THE FORMATION, EXECUTION, BREACH OR TERMINATION THEREOF ***SHALL BE EXCLUSIVELY SETTLED AND RESOLVED BY ARBITRATION CONDUCTED IN THE ENGLISH***

---

[10] Each of the contracts between the parties contains a New York choice of law clause. Ex. A-1, Ex. A-3, and Ex. A-5 at Section 26 ("This contract shall be governed by, construed and enforced under the laws of the State of New York without giving effect to its conflicts of laws principles."). To the extent Valero argues Texas law applies, there is no reason to believe Texas law yield any different result.

[11] *See* Samples Aff. The terms of the three contracts are found in Exhibit A-1, Exhibit A-3, and Exhibit A-5, respectively. Exhibit A-1 contains the arbitration provision. Exhibits A-3 and A-5 contain the exclusive choice of jurisdiction provision.

[12] Dkt. #43-1 through 43-3.

[13] Dkt. #46 at ¶9.

*LANGUAGE IN THE CITY OF NEW YORK, STATE OF NEW YORK, USA*, IN ACCORDANCE WITH THE THEN CURRENT INTERNATIONAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION BEFORE A PANEL OF THREE ARBITRATORS."

As described in the attached Samples Affidavit, the parties agreed to the arbitration clause found in Contract No. 1654384. Trafigura sent its contract terms in writing to Valero, including the arbitration clause. Trafigura's proposed terms stated that no additional terms beyond those therein would apply.[14] Valero sent its written confirmation to Trafigura expressly agreeing to Trafigura's terms. Specifically, the Valero confirmation stated: "*Valero Marketing and Supply Company recognizes that Trafigura Trading LLC's Contract (the "Contract") governs this transaction*…."[15] Trafigura later delivered the product covered by Contract No. 1654384, which Valero accepted and paid for.[16]

Contract No. 1654384 selects New York law to govern the parties' contract.[17] In New York, arbitration agreements are governed by New York C.P.L.R. § 7501, which states that "[a] written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award." Courts

---

[14] The first page of Trafigura's proposed terms stated: "If the seller and…the buyer issue contracts for the above referenced deal, the seller's contract prevails…." Samples Aff. at Exs. A-1, A-3, and A-5. Trafigura's proposed terms stated in Section 30 that if "[a]dditional or different terms from those set forth herein shall be construed as proposals for amendments, and shall not become part of the contract unless expressly agreed to by seller…." *Id.* Section 28 of Trafigura's proposed terms also contained a strong merger clause, providing that this document "contains the entire agreement of both parties." *Id.*

[15] *Id.* at Exs. A-2, A-4, and A-6 (all at page one).

[16] *Id.* at ¶8.

[17] *Id.* at Exs. A-1, A-3, and A-5, each at Section 26 ("This contract shall be governed by, construed and enforced under the laws of the State of New York without giving effect to its conflicts of laws principles."). To the extent Valero contends Texas law applies to the issue of whether a valid agreement to arbitrate exists, Texas has also adopted UCC 2-207, so the arbitration agreement would be binding under Texas law as well.

have consistently interpreted this rule to require that an agreement to arbitrate be in writing but not necessarily be signed by the party to be bound. "[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature." *McAllister Brothers v. A&S Transportation Co.*, 621 F.2d 519, 524 (2d Cir. 1980).[18] The key issue "is not whether the [agreement] was signed by the party sought to be charged ... but whether there was a meeting of the minds of the parties as to the essential terms of the agreement, even though unsigned by one party." *A/S Custodia v. Lessin Int'l., Inc.*, 503 F.2d 318, 320 (2d Cir. 1974).

Moreover, New York has adopted Section 2-207 of the Uniform Commercial Code, which applies to the sale of goods.[19] Section 2.207(c) of the UCC provides that where, as here, the parties never applied a signature to a document constituting the contract, "conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale…." Here, the parties' "conduct…recognized the existence of a contract" because Trafigura delivered the product, and Valero accepted and paid for it. *See* Samples Aff. In such cases, "the terms of the particular contract [will] consist of **those terms on which the writings of the parties agree**." *Id.* Because Valero's confirmation expressly agreed to Trafigura's proposed terms, Trafigura's terms, including the arbitration provision, became the contract between Valero and Trafigura.[20]

---

[18] *See also Washington Heights–West v. District 1199*, 748 F.2d 105, 107-09 (2d Cir. 1984) (arbitration can be enforced without a formally executed arbitration agreement if arbitration was the intent of the parties); *Royal Air Maroc v. Servair, Inc.*, 603 F. Supp. 836, 840-42 (S.D.N.Y. 1985) (even without a signed arbitration agreement, C.P.L.R. § 7501 can be satisfied by determining the intent of the parties and examining the integration of several documents).

[19] To the extent Valero argues that Texas law and not New York law applies, Texas has also adopted Section 2-207 of the UCC as part of its Business and Commerce Code.

[20] It is of no moment that Valero's confirmations proposed an additional set of "key provisions." Because Trafigura's proposed terms stated that no additional terms would apply, under 2-207(b)(1), Trafigura's "offer expressly limit[ed] acceptance to the terms of the offer." Hence, Valero's additional terms did not become part of the contract.

**C.     The Mandatory Arbitration Clause Applies to Valero's Third-Party Claims Against Trafigura Relating to Product Delivered Under Contract 1654384.**

To the extent this Court addresses the scope of the arbitration clause, federal law governs. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48 (2d Cir. 1993); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077-78 (5th Cir. 2002). The U.S. Supreme Court, Second Circuit, and Fifth Circuit have characterized arbitration clauses mandating arbitration of "any dispute, controversy, or claim arising out of or relating to", such as the one at issue here, as "broad." *E.g.*, *Prima Paint Corp., v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967) (labelling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164–65 (5th Cir. 1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute ... arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship."). The existence of a broad arbitration clause creates a presumption of arbitrability which can be overcome only if it may be said "with positive assurance" that the arbitration clause is not susceptible to the interpretation that it covers the asserted dispute. *Orange Cty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005).

Here, each of Valero's third-party claims against Trafigura concerning the product deliveries covered by Contract No. 1654384 "arise out of or relate" to that contract. As set forth above, Valero itself alleges in its Second Amended Third Party Complaint that Trafigura sold its product to Valero in "parcels," which are controlled by "agreements," and the product caused

damage to NSCSA for which Valero may be liable.[21]  Hence, no matter whether Valero's third-party claims against Trafigura sound in contract, tort, warranty, or statutory indemnity, to the extent the claims "arise out of" or "relate to" the product delivered by Trafigura under Contract No. 1654384, all such claims are subject to the broad mandatory arbitration clause.  *See Norcom Elecs. Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 204 (S.D.N.Y. 2000) ("Moreover, the fact that the arbitration clause broadly encompasses '[a]ny controversy or claim arising out of or relating to this Agreement or breach thereof' belies Norcom's argument that the clause excludes tort claims collateral to the Distributor Agreement itself. Had Norcom wished to exclude such collateral claims from arbitration, it could have bargained for a narrower clause."); *see also Collins*, 58 F.3d 16, 23 (2d Cir. 1995) ("The mere fact that this is a tort claim, rather than one for breach of the Contracts, does not make the claim any less arbitrable.").  Finally, the arbitration clause is clearly mandatory, as it states that claims arising out of or relating to the contract "shall be exclusively settled and resolved by arbitration."  This is mandatory language, not permissive language.

**D.    Those Claims Subject to the Valid Arbitration Clause Should Be Dismissed.**

Section 3 of the Federal Arbitration Act provides that where a suit is brought in a federal court that "upon any issue [is] referable to arbitration under an agreement in writing for such arbitration," a court shall "stay the trial of the action until such arbitration has been had…."  9 U.S.C. § 3.

Courts routinely hold, however, that as an alternative to a stay, if a party so requests, a court may dismiss a claim that is subject to a binding arbitration clause.  *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) (stay must be granted if requested under Section 3 of FAA, but dismissal also appropriate if all issues raised are subject to arbitration).  While federal

---

[21] Dkt. #43 at ¶¶10-32.

courts are divided about the proper mechanism to dismiss a claim subject to an arbitration clause, the Fifth Circuit has accepted Federal Rule of Civil Procedure 12(b)(3) as the appropriate mechanism. *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) ("[O]ur court has treated a motion to dismiss based on [an arbitration clause] as properly brought under Rule 12(b)(3) (improper venue)"). Courts within the Second Circuit have at times treated 12(b)(1) and 12(b)(6) as the proper mechanism. *Orange Cnty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 373 (S.D.N.Y. 2005) (treating motion to dismiss claims subject to arbitration clause as 12(b)(1) motion); *Color-Web, Inc. v. Mitsubishi Heavy Indus. Printing & Packaging Mach., Ltd.*, 2016 WL 6837156, at *3 (S.D.N.Y. Nov. 21, 2016) (treating motion to dismiss claims subject to arbitration clause as 12(b)(6) motion).[22] Trafigura contends that dismissal under Rule 12(b)(3) is appropriate. To the extent the Court holds Rule 12(b)(1) or 12(b)(6) is appropriate, Trafigura urges, in the alternative, for dismissal under these Rules.

Valero's purported invocation of Rule 14(c) is not a bar to enforcement of the arbitration clause between Trafigura and Valero. As the Fifth Circuit held in *Texaco*, *supra*, "the policy of liberal joinder in maritime cases embodied in Rule 14(c) does not supersede the statutory right to enforce contractual arbitration guaranteed by the FAA." *Texaco*, 243 F.3d at 908. In a case similar to the present one, *Mosaic Underwriting Service, Inc v. MONCLA Marine Operations, L.L.C.*, 926 F. Supp. 2d 865 (E.D. La. Feb. 20, 2013), defendant Moncla Marine brought a third-party complaint against third-party defendant Osprey under Rule 14(c). *Id.* at 871-72. Citing a binding arbitration clause in the contract between Moncla Marine and Osprey, Osprey moved to stay the

---

[22] *See also Palko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004) (Rule 12(b)(6) is proper mechanism).

proceedings and compel arbitration. *Id.* Citing *Texaco*, the court agreed with Osprey, reasoning that Rule 14(c) does not override a binding arbitration agreement between a defendant and a third-party defendant. *Id.*

### III. Conclusion

For the above reasons, to the extent Valero's third-party claims rely on product deliveries by Trafigura subject to Contract No. 1654384, Trafigura respectfully requests this Court dismiss such claims, as they are subject to a valid, written arbitration clause.

Dated: August 23, 2019

Respectfully submitted,

REED SMITH LLP
s/ *Stephen E. Scheve*
Stephen E. Scheve (attorney-in-charge)
Texas Bar No. 00794928
S.D. Tex. No. 18784
sscheve@reedsmith.com
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Telephone: +1 713 469 3812
Facsimile: +1 713 469 3899

Counsel:

Curtis R. Waldo
Texas Bar No. 24090452
S.D. Tex. No. 2331235
cwaldo@reedsmith.com
Reed Smith LLP
811 Main Street Suite 1700
Houston, TX 77002-6110
Telephone: +1 713 469 3837
Fascimile: +713 369 3899

*Counsel for Third-party Defendant Trafigura Trading LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, I caused the foregoing document to be served on all counsel of record in compliance with the Federal Rules of Civil Procedure.

s/ *Curtis R. Waldo*
Curtis R. Waldo